# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Deborah S. Hunt<br>Clerk | 100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988 | Tel. (513) 564-7000<br>www.ca6.uscourts.gov |

Filed: May 9, 2013

Mr. William Alexander Blue Jr.
Constangy, Brooks & Smith
401 Commerce Street
Suite 700
Nashville, TN 37219

Ms. Michelle Blaylock Owens
Agee, Van Atta & Owens
3340 Perimeter Hill Drive
Nashville, TN 37211

> Re: Case No. 12-6028, *Bilqis Miles v. Nashville Electric Service*
> Originating Case No. : 3:11-cv-00931

Dear Counsel:

The Court issued the enclosed Opinion today in this case.

                Sincerely yours,

                s/Jeanine R. Hance
                Case Manager
                Direct Dial No. 513-564-7037

cc: Mr. Keith Throckmorton

Enclosure

Mandate to issue

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0466n.06

No. 12-6028

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*May 09, 2013*
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| BILQIS EDAWN MILES, | ) |
| **Plaintiff-Appellant,** | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| v. | ) COURT FOR THE MIDDLE |
| | ) DISTRICT OF TENNESSEE |
| NASHVILLE ELECTRIC SERVICE, | ) |
| **Defendant-Appellee.** | ) **O P I N I O N** |

**Before: MOORE and STRANCH, Circuit Judges; and HOOD, District Judge.**[*]

**KAREN NELSON MOORE, Circuit Judge.** In this case, Plaintiff-Appellant Bilqis Miles ("Miles") alleges that her former employer, Defendant-Appellee Nashville Electric Service ("NES"), interfered with her rights under the Family and Medical Leave Act ("FMLA") in connection with Miles's resignation from NES in May 2011. Miles suffered a psychotic break in April 2011 for which she was hospitalized, and for which she took medical leave under the FMLA. The day after returning to NES from her medical leave, Miles informed her supervisor that she would not be coming back to work, and she submitted a resignation letter. Although Miles sought to rescind her resignation three days later, NES refused to reinstate her. Miles then brought this action, contending that her resignation was coerced and that NES did not fulfill its duty under the FMLA to determine whether Miles was requesting further medical leave following her return to work. The district court

---

[*]The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

No. 12-6028
*Miles v. Nashville Electric Service*

granted summary judgment to NES, finding that the evidence demonstrated that Miles voluntarily quit her job, and that NES had no duty under the FMLA to second-guess her decision to resign. For the reasons that follow, we **AFFIRM** the district court's judgment.

## I.  BACKGROUND

Miles began working in NES's civil and environmental engineering department in 2000. R. 23-1 (Pl.'s Resp. to Def.'s Stmt. of Material Facts at 2) (Page ID #433). In September 2008, Miles suffered a psychotic break while at work, causing her to run screaming from the building. R. 1 (Compl. ¶ 8) (Page ID #2). Additionally, Miles used FMLA leave three times during the fall of 2010 for hospitalizations relating to mental health events. *Id.* ¶¶ 9–10 (Page ID #2). On April 11, 2011, Miles suffered another psychotic break—acute psychosis including visual hallucinations—that required hospitalization, and for which she requested FMLA leave. *See id.* ¶¶ 11–13 (Page ID #2); R. 23-4 (Certificate of Need for Emergency Involuntary Admission) (Page ID #447). Miles was discharged from the hospital on April 18, 2011, and was not subsequently readmitted. *See* Appellant Br. at 5; R. 18-4 (Parker Dep. at 13–14) (Page ID #53–54); R. 18-8 (F. Miles Dep. at 12) (Page ID #92).

On May 5, 2011, after submitting FMLA paperwork including a medical release to NES, Miles returned to her job. *See* Appellant Br. at 6. The release, signed by Miles's physician, stated that she was "capable to return to work without restriction as of 5/4/2011." R. 18-2 (Ex. B) (Page ID #47). NES "[p]rovisionally approved" Miles's FMLA leave from April 11, 2011, to May 4, 2011, pending re-submission of an adequate and complete Certification of Health Care Provider. R. 23-6

2

No. 12-6028
*Miles v. Nashville Electric Service*

(Supervisory Resp. to FMLA at 2) (Page ID #453); *see* R. 22-2 (Miles Dep. at 15–16) (Page ID #274–75). After working for half of the day on May 5, Miles asked for permission from her supervisor, Mike Buri ("Buri"), to leave early. R. 22-4 (Buri Dep. at 18) (Page ID #336). After she received permission, Miles left for the day. *See id.*

The following morning, May 6, 2011, Miles called Buri from a credit union near NES and informed Buri that she "wasn't gonna be back" at work. R. 22-2 (Miles Dep. at 17) (Page ID #276); *see also* R. 22-4 (Buri Dep. at 24) (Page ID #342) (stating that Miles told him "that she was not coming back"). Buri asked Miles to clarify what she meant, and Miles told him that she was quitting her job at NES. *See* R. 22-4 (Buri Dep. at 25) (Page ID #343). Miles testified that her decision to resign was made that morning, that she made the decision on her own, and that no one at NES tried to talk her into quitting. *See* R. 22-2 (Miles Dep. at 27–28) (Page ID #286–87); *id.* at 41 (Page ID #300) ("[Quitting] was just a—a spur of the moment decision . . . . I got there and I was like I'm gonna quit."). Miles stated that in hindsight, she "probably could have used more time off" relating to her mental health issues. *Id.*

Buri told Miles that if she wanted to resign, she needed to write a resignation letter. R. 22-4 (Buri Dep. at 30–31) (Page ID #348–49). Miles and Buri agreed to meet at a nearby farmers' market, where Miles gave Buri the resignation letter she had written that morning as well as her company ID card. *See id.* at 47–48 (Page ID #365–66); R. 22-2 (Miles Dep. at 26) (Page ID #285). The resignation letter stated: "I am resigning from Nashville Electric Service as of 5/6/11. Thanks, Bilqis E. Miles." R. 18-3 (Ex. C) (Page ID #48). Miles testified that she wrote the resignation letter

3

No. 12-6028
*Miles v. Nashville Electric Service*

because she no longer wanted to work at NES. *See* R. 22-2 (Miles Dep. at 26–27) (Page ID #285–86).

Three days later, on May 9, 2011, after discussing the matter with her family, Miles sought to rescind her resignation. *See* R. 1 (Compl. ¶ 27) (Page ID #4). During Miles's three week FMLA leave, Miles's mother had spoken with a Senior Benefits Analyst at NES who informed her that based upon the medical information of disability provided, when Miles completed the 30th day of disability absence, she became eligible for short-term disability benefits at a rate of 85% of her base pay and could apply for long-term benefits after 90 days. *See* R. 22-5 (Fine Dep. at 25–27) (Page ID #408–10). Miles told the union steward, Keith Brown ("Brown"), that her mother told her that she "made a mistake" by quitting. R. 18-6 (Brown Dep. at 12) (Page ID #74). NES refused to reinstate Miles. *See* Appellee Br. at 10. The parties dispute whether NES has, or has ever had, a policy that permits rescission of a resignation in similar circumstances. *Compare* R. 18-1 (Bradley Decl. ¶¶ 4–5) (Page ID #46) (declaring that NES never had a policy permitting rescission of a resignation), *with* R. 22-1 (Nevil Dep. at 10–11) (Page ID #209–10) (stating that NES generally permitted an employee to rescind a resignation during a three-day window following resignation).

On September 30, 2011, Miles brought a complaint in the United States District Court for the Middle District of Tennessee alleging that NES violated her rights under the FMLA. *See* R. 1 (Compl.) (Page ID #1). Following discovery, NES moved for summary judgment. *See* R. 19 (Def.'s Mem. Supporting Summ. J.) (Page ID #112). The district court found that NES had no duty to recognize that Miles may not have been fit to return to work on May 5, given that she provided a

No. 12-6028
*Miles v. Nashville Electric Service*

medical release. *See Miles v. Nashville Elec. Serv.*, No. 3-11-0931, 2012 WL 3561809, at *3 (M.D. Tenn. Aug. 16, 2012). The district court also found that Miles's resignation was voluntary, and that NES had no duty under the FMLA to allow Miles to rescind her voluntary resignation. *See id.* Accordingly, the district court granted summary judgment to NES and dismissed Miles's action. *Id.* at *4. Miles timely appealed. We have jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1291 and 1331.

## II. STANDARD OF REVIEW

We review de novo a district court's grant of summary judgment. *Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 506 (6th Cir. 2006). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment will not be granted if there is a genuine dispute about a material fact, "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, we view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III. ANALYSIS

Miles's complaint raises an interference claim under the FMLA. *See* R. 1 (Compl. at 4–5) (Page ID #4–5). "The FMLA entitles qualifying employees to up to twelve weeks of unpaid leave each year if, among other things, an employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'" *Walton v. Ford Motor*

No. 12-6028
*Miles v. Nashville Electric Service*

*Co.*, 424 F.3d 481, 485 (6th Cir. 2005) (quoting 29 U.S.C. § 2612(a)(1)(D)).  The FMLA makes it unlawful "for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." 29 U.S.C. § 2615(a)(1); *see Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003).  In order to succeed on an interference claim under the FMLA, the plaintiff must demonstrate that

> (1) he was an eligible employee; (2) the defendant was an employer as defined under the FMLA; (3) the employee was entitled to leave under the FMLA; (4) the employee gave the employer notice of his intention to take leave; and (5) the employer denied the employee FMLA benefits to which he was entitled.

*Walton*, 424 F.3d at 485.

At issue in this appeal is whether NES failed to fulfill a duty to inquire further in the context of Miles's conversation with Buri to determine whether Miles was requesting leave for a potentially FMLA-qualifying reason.  "[T]o invoke the protection of the FMLA, an employee must provide notice and a qualifying reason for requesting the leave"—"nothing in the statute places a duty on an employer to affirmatively grant leave without such a request or notice by the employee." *Brohm v. JH Props., Inc.*, 149 F.3d 517, 523 (6th Cir. 1998); *see* 29 C.F.R. § 825.303(b) (2009)[1] ("An employee *shall* provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." (emphasis added)).  We have explained that "the critical test for substantively-sufficient notice is whether the information that the employee conveyed to the employer was reasonably adequate to apprise the employer of the employee's request to take leave

---

[1] The controlling versions of the FMLA regulations are those in place when the events at issue occurred.  *See Verkade v. U.S. Postal Serv.*, 378 F. App'x 567, 573 n.4 (6th Cir. 2010).

6

No. 12-6028
*Miles v. Nashville Electric Service*

for a serious health condition that rendered him unable to perform his job." *Brenneman v. MedCentral Health Sys.*, 366 F.3d 412, 421 (6th Cir. 2004). Although the employee need not expressly mention the FMLA, she must "give[] the employer enough information for the employer to reasonably conclude that an event described in [the] FMLA . . . has occurred." *Hammon v. DHL Airways, Inc.*, 165 F.3d 441, 451 (6th Cir. 1999).

The employer also has responsibilities relating to the designation of FMLA leave: the FMLA's implementing regulations state that "where the employer does not have sufficient information about the reason for an employee's use of leave, the employer should inquire further of the employee . . . to ascertain whether leave is potentially FMLA-qualifying." 29 C.F.R. § 825.301(a) (2009). The duty to inquire further, however, is triggered only once the employee has provided sufficient notice. *See Righi v. SMC Corp. of Am.*, 632 F.3d 404, 409–10 (7th Cir. 2011) ("Once an employee invokes his FMLA rights by alerting his employer to his need for potentially qualifying leave, the regulations shift the burden to the employer to take certain affirmative steps to process the leave request. . . . [including] a duty to make further inquiry if additional information is needed."); *Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1049 (8th Cir. 1999); *Hammon*, 165 F.3d at 450.

Miles argues that NES interfered with her FMLA rights by failing to "inquire[] further into [Miles's] statement that she did not want to come back, and consider it as a need for continued leave, . . . to ascertain whether continued FMLA [leave] would have been appropriate." Appellant Br. at 10. Miles contends that she gave sufficient notice to NES triggering its duty to inquire further when

7

No. 12-6028
*Miles v. Nashville Electric Service*

she told Buri on May 6, 2011, that she "could not come back" after having left work early on the preceding day. *Id.* at 13. Miles further asserts that her statements to Buri did not communicate that she wanted to quit, but instead, that those statements "could quite plausibly be interpreted to mean that her decision to come back was premature, that she was not ready to return, that she was questioning her own decision to return the previous day." *Id.* at 7.

  We reject Miles's interpretation because the evidence, taken in the light most favorable to Miles, does not support it. As the district court found, all of the evidence indicates that Miles communicated to Buri that she wanted to resign—not take more medical leave—and that she came to this decision absent any coercion. *See Miles*, 2012 WL 3561809, at *3. Both Miles and Buri testified that Miles called Buri on the morning of May 6 and told him that she "was not coming back." R. 22-4 (Buri Dep. at 24) (Page ID #342); *see* R. 22-2 (Miles Dep. at 17) (Page ID #276). Miles concedes that Buri inquired further, asking Miles "what type of leave she needed" in an effort to understand the reason for Miles's reported absence. Appellant Br. at 7; R. 22-4 (Buri Dep. at 24–25) (Page ID #342–43). Miles testified that she told Buri that she wanted to quit her job at NES, *not* that she wanted to take additional medical leave or that she needed more time to recuperate from her psychotic break. *See* R. 22-2 (Miles Dep. at 17, 27–28) (Page ID #276, 286–87). Buri's testimony is consistent with Miles's recollection of the conversation: Buri stated that Miles told him she wanted to quit. *See* R. 22-4 (Buri Dep. at 25) (Page ID #343). Thus, there is no genuine dispute regarding the fact that Miles communicated to Buri that she wanted to resign, and that this resignation was voluntary. Given the unrefuted evidence that Miles communicated to Buri that she

8

No. 12-6028
*Miles v. Nashville Electric Service*

wanted to quit, and that she came to this decision independently, Miles's contention that her statements reasonably could be interpreted by NES as a request for additional medical leave rings hollow.

  Miles further argues that NES's knowledge of her previous psychotic breaks, combined with her "uncharacteristic" behavior of working for a half-day and then leaving with little explanation, was "sufficient information [for NES] to question the reason for Ms. Miles'[s] request for leave." Appellant Br. at 13. We agree that an employer's knowledge of an employee's prior medical history may be relevant to the determination of whether an employee gave adequate notice to invoke FMLA rights in a particular instance. *See, e.g.*, *Barrett v. Detroit Heading, LLC*, 311 F. App'x 779, 791–92 (6th Cir. 2009) (citing employer's knowledge of employee's history of medical problems as part of the relevant evidence triggering the employer's duty to inquire further). Nonetheless, nothing in the record surrounding the circumstances of Miles's resignation gave NES a reason to think that Miles may have been requesting additional FMLA leave. Just one day earlier, on May 5, Miles presented a medical release from her physician stating that Miles was "capable to return to work without restriction as of 5/4/2011." R. 18-2 (Ex. B) (Page ID #47). At this point, NES had a duty to reinstate Miles, not to second-guess her ability to return to work. *See* 29 C.F.R. § 825.312(b) (2009) (stating that once an employee provides a fitness-for-duty certification from a health care provider certifying that the employee is able to resume work, "[t]he employer may not delay the employee's return to work" while the employer obtains additional clarification or authentication); *Brumbalough v. Camelot Care Ctrs., Inc.*, 427 F.3d 996, 1003–04 (6th Cir. 2005). Miles's behavior of asking to

9

No. 12-6028
*Miles v. Nashville Electric Service*

leave early on May 5 was not so erratic or bizarre as to indicate current psychosis or hallucinations which could have apprised NES that Miles was incapacitated and may have needed additional FMLA leave. Accordingly, we need not address whether such indications of incapacitation or psychosis may constitute constructive notice of a need for FMLA leave under the statute. *Compare Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 726 (7th Cir. 2007) (holding that "either an employee's inability to communicate his illness to his employer or clear abnormalities in the employee's behavior may constitute constructive notice of a serious health condition"), *with Scobey v. Nucor Steel-Arkansas*, 580 F.3d 781, 788 (8th Cir. 2009) (declining to adopt the Seventh Circuit's constructive-notice test). In short, the record in this case indicates that NES had no reason to interpret Miles's statement on May 6 that she would not be coming back to work as an indication that she was requesting leave for a serious health condition.

Accordingly, NES did not have a duty to inquire further as to whether Miles was requesting leave for a potentially FMLA-qualifying reason. This is because Miles's statements to Buri were not "reasonably adequate to apprise the employer of the employee's request to take leave for a serious health condition that rendered h[er] unable to perform h[er] job." *Brenneman*, 366 F.3d at 421. Miles's claim that NES violated her FMLA rights by failing to determine whether she was requesting further FMLA leave fails as a matter of law, because on this record she cannot show that NES

No. 12-6028
*Miles v. Nashville Electric Service*

violated any of its obligations under the FMLA. Therefore, we conclude that the district court did not err in granting summary judgment to NES.[2]

Finally, to the extent that Miles argues that relief is warranted based on NES's refusal to permit Miles to rescind her resignation, this argument also fails. Because the record indicates that Miles voluntarily resigned from her position on May 6, 2011, after her resignation she was no longer an employee at NES. Accordingly, she was no longer an "eligible employee" entitled to rights and benefits under the FMLA. *See* 29 U.S.C. § 2612(a)(1); *Hammon*, 165 F.3d at 451; *Brohm*, 149 F.3d at 523. Even taking the evidence in the light most favorable to Miles and assuming that NES did have a policy to permit rescission of resignations, any duty NES has to follow that policy does not arise under the FMLA. Indeed, Miles concedes that the FMLA does not place a duty on an employer to permit rescission of an employee's voluntary resignation. *See* Appellant Br. at 11. Given that the only cause of action contained in Miles's complaint is an FMLA claim, Miles is not entitled to relief relating to NES's refusal to permit rescission of her resignation in this litigation. *See* R. 1 (Compl. at 4–5) (Page ID #4–5).

---

[2]Because we affirm the district court's judgment on the merits, we need not address NES's argument that it is entitled to sovereign immunity from suit. Nonetheless, we note that this argument is frivolous: entities that are not arms of the state, including municipal entities, are not entitled to federal sovereign immunity. *See Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752, 760 (6th Cir. 2010). The Supreme Court of Tennessee has held that NES is a municipal entity—a fact that NES concedes. *See Lanius v. Nashville Elec. Serv.*, 181 S.W.3d 661, 664 (Tenn. 2005); *Nashville Elec. Serv. v. Luna*, 204 S.W.2d 529, 531 (Tenn. 1947); R. 20 (Def.'s Concise Stmt. of Material Facts at 1) (Page ID #126). Accordingly, NES is not immune from suit under the FMLA in federal court.

11

No. 12-6028
*Miles v. Nashville Electric Service*

## IV.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.